


# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

TABITHA DEGUIDO

        **Plaintiff,**

v.

        Case No.: 8:17 cv1102 T26 JSS

STERLING JEWELERS, INC.,

        **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, TABITHA DEGUIDO, by and through her undersigned

counsel and sues the Defendant, STERLING JEWELERS, INC. (hereinafter referred to as

"STERLING") and states as follows:

### JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1367 and

1441(b).

2.     Venue lies within the United States District Court for the Middle District of

Florida, Tampa Division because a substantial part of the events giving rise to this claim

occurred in this Judicial District and is therefore proper pursuant to 28 U.S.C. 1391(b).

### PARTIES

3.     Defendant, STERLING, is a Foreign Profit Corporation authorized and doing

business in this Judicial District. Defendant is the largest fine jewelry company in the United

States. At all times material, STERLING employed Plaintiff, TABITHA DEGUIDO. At all

times material, STERLING employed the requisite number of employees and, therefore, is an



employer as defined by the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, Family and Medical Leave Act, Equal Pay Act, and Florida Civil Rights Act, and Florida's Private Whistleblower's Act.

4.     At all times material, Plaintiff, TABITHA DEGUIDO was an employee of Defendant within the meaning of the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, Family and Medical Leave Act, Equal Pay Act, and Florida Civil Rights Act, and Florida's Private Whistleblower's Act.

## GENERAL ALLEGATIONS

5.     At all times material, Defendant acted with malice and reckless disregard for Plaintiff's federal and state protected rights.

6.     At all times material, Plaintiff was qualified to perform her job duties within the legitimate expectations of her employer.

7.     Plaintiff has retained the undersigned counsel to represent her in this action and is obligated to pay them a reasonable fee for their services.

8.     Plaintiff requests a jury trial for all issues so triable.

## ADMINISTRATIVE PREREQUISITES

9.     Plaintiff, TABITHA DEGUIDO, timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") on November 4, 2015.  On February 9, 2017, the EEOC issued a Dismissal and Notice of Rights related to Plaintiff's first Charge of Discrimination.  A copy of the Charge of Discrimination and Dismissal is attached as **Exhibit A**.  This Complaint has

been filed within ninety (90) days of the issuance of the Dismissal and Notice of Rights; therefore, Plaintiff has met all conditions precedent to filing this Complaint.

10. Plaintiff has satisfied all conditions precedent, therefore jurisdiction over this claim is appropriate pursuant to Chapter 760, *Florida Statutes*, because more than one-hundred and eighty (180) days have passed since the filing of the Charge.

<u>**FACTUAL ALLEGATIONS**</u>

11. On or about October 27, 2009, Plaintiff began her employment with Defendant as a Sales Associate. Plaintiff was later promoted to a 3rd Key position, Assistant Manager and Manager. On or about May 27, 2013, Plaintiff began working as Store Manager at Defendant's Marks & Morgan store at Wiregrass. Throughout her career with Defendant, Plaintiff has been a solid performer and has been given various accolades by Defendant.

12. In or around May 2012, Plaintiff filed a Charge of Discrimination with the EEOC. After filing the Charge of Discrimination, Plaintiff made several complaints to Defendant's management and Human Resources regarding the manner in which she was treated by employees who were close to those named in the Charge of Discrimination. However, the behavior by the employees continued.

13. In or around October 2013, Dale Bowling (District Manager), made a public pass at Plaintiff at Plaintiff's first manager's meeting. Specifically, Bowling grabbed Plaintiff's hand and told her that he would watch out for her and place her in higher volume stores. Plaintiff rejected Bowling's overture and, as a result, Bowling would not assist Plaintiff and often would not answer phone calls from Plaintiff. At least one other female

employee of Defendant's complained to Bowling about sexual harassment, but Bowling did nothing to help the employee.

14.    In her positions with Defendant, Plaintiff was a non-exempt, hourly paid (plus commissions) employee under the FLSA. Plaintiff was regularly scheduled to work approximately 40 hours per week while employed by Defendant.

15.    Plaintiff was required to perform her job duties and responsibilities outside of, and in addition to, her regularly-scheduled shift. Specifically, Plaintiff was required to work off-the-clock before and after her scheduled shift and worked through her meal breaks despite being off-the-clock. Plaintiff was not compensated at a rate of time and one-half her regular rate of pay for the hours worked.

16.    Plaintiff worked an average of approximately three (3) hours off-the-clock per work week; however, Plaintiff was not compensated at a rate of time and one-half her regular rate of pay for all hours worked over forty (40) in a work week.

17.    In or around November 2014, Plaintiff reported a male assistant manager to Defendant's Loss Prevention for stealing.

18.    On or about January 12, 2015, Nathalie Bernaudo (District Manager) informed Plaintiff that she was being demoted from Manager to Sales Associate. Bernaudo told Plaintiff that the demotion was due to Plaintiff's store having lower standards than other stores in the district. However, Plaintiff's store was ranked the same as several others in her district and her store's sales percentage was significantly higher than other stores. When Plaintiff contested the reason for her demotion, Plaintiff was told that the sales/rankings were

looked at over a two year period. However, Plaintiff became manager at her store in May 2013 and the store was behind when she assumed the position.

19.     As a result of Plaintiff's demotion, Plaintiff was assigned to work at a store managed by Mark Roth. The store was one of the three (3) furthest stores from Plaintiff's home.

20.     At the time of Plaintiff's transfer to Roth's store, Roth had a history of harassing and violent behavior toward some of Defendant's female employees.

21.     In or around early February 2015, Plaintiff requested a transfer out of Roth's store, but was denied. Plaintiff has knowledge that male employees were granted transfers during that same time frame.

22.     In or around late February 2015/early March 2015, Roth assaulted Plaintiff by putting his hands in Plaintiff's face and attempting to strike Plaintiff.

23.     A few weeks later, Roth threw a call log at Plaintiff's co-worker, Misty Strickland.

24.     Plaintiff and other female employees of Defendant made complaints about Roth to Bernaudo, but nothing was done to stop Roth's behavior and improve the working environment.

25.     Instead, in or around May 2015, Roth was transferred to a higher volume store, which is viewed as a promotion. At the time of his transfer, Roth's store was performing worse than the store from which Plaintiff was previously demoted.

26.     Following Roth's transfer, Plaintiff applied (along with at least two other females) for the open manager position, but was not hired. Instead, Defendant hired a male

from another district, despite the fact that at least three (3) of the female applicants, including Plaintiff, were managers for Defendant in the past.

27.     During Plaintiff's interview for the open manager's position, Plaintiff made another complaint to Bernaudo regarding her demotion and discussed transferring to a store in Brooksville, Florida. In or around June 2015, Plaintiff followed up with Bernaudo regarding the transfer, Bernaudo told Plaintiff that there were no positions available.

28.     On or about July 10, 2015, Josh Compton (Store Manager) informed Plaintiff that Bernaudo instructed him to confront Plaintiff and tell Plaintiff not to discuss her "lawsuit" and further wanted Plaintiff to sign a paper agreeing to the same.

29.     As a result of the ongoing issues with Defendant, Plaintiff's health began to decline. Plaintiff has a progressive auto-immune disease and the stress and anxiety stemming from the situations at work was exacerbating Plaintiff's disability. Additionally, Plaintiff suffers from chronic migraine and cluster headaches that become more common due to stress and anxiety.

30.     On or about July 26, 2015, Plaintiff was approved for, and began, medical leave under the Family and Medical Leave Act (FMLA).

31.     In or around late July 2015, Plaintiff requested a transfer. On or about July 27, 2015, Bernaudo told Plaintiff that there were no full-time positions available in the district, which was not true.

32.     On or about September 14, 2015, Plaintiff requested a reasonable accommodation for her disabilities. Specifically, Plaintiff requested that she be transferred to

one of Defendant's locations closer to Plaintiff's home. Plaintiff provided examples of a new outlet store that had an open position, along with Defendant's Coastal location.

33. On or about September 15, 2015, Plaintiff was granted a transfer, but not to either of the locations mentioned in Plaintiff's accommodation request. Instead, Plaintiff was transferred to a store in a distressed mall in Port Richey, Florida where the female employees were given goals that were higher than the male employees.

34. On or about September 29, 2015, Plaintiff returned from her FMLA leave. However, Plaintiff was not given scheduled work hours until October 2, 2015. Moreover, although Plaintiff was qualified and entitled to a merit increase, Plaintiff did not receive one, even though Plaintiff's co-workers received merit increases during that time.

35. On November 4, 2015, Plaintiff filed a Charge of Discrimination with the EEOC and Florida Commission on Human Relations.

36. In or around January 2016, Plaintiff was written-up.

37. In February 2016, Plaintiff's fiancé, Erik Bakke passed away. Bakke was also employed by Defendant and had a life insurance policy. Plaintiff was the named beneficiary. On multiple occasions, Plaintiff attempted to obtain a copy of the policy from Defendant, but Defendant refused to provide Plaintiff with the document.

38. Plaintiff took medical leave and returned to work for Defendant in May 2016.

39. On or about June 9, 2016, Plaintiff was transferred to Defendant's University Mall location in Tampa, Florida to work as Assistant Manager.

40. In or around November 2016, spoke with Bernaudo regarding her disabilities and the fact that it was becoming difficult for Plaintiff to work such long hours. Plaintiff

asked Bernaudo that she tell Defendant's Vice President that Plaintiff has a disability and cannot be on her feet all day. Bernaudo laughed at Plaintiff and Plaintiff told her that it was not funny and she was not joking.

41.    In or around late December 2016, Plaintiff learned that Defendant's Human Resources was investigating an "anonymous" complaint about Plaintiff.

42.    On January 12, 2017, Plaintiff was terminated from her employment with Defendant. Plaintiff was terminated for alleged time card fraud, despite Defendant's Human Resources failing to conduct a full and thorough investigation and despite Plaintiff's direct supervisor supporting the fact that Plaintiff did not engage in time card fraud. Moreover, a male employee, Jonathan McDonald actually engaged in time card fraud and was not terminated by Defendant.

43.    Despite agreeing to pay a match on Plaintiff's 401(k), Defendant failed to contribute its match on Plaintiff's final paycheck.

44.    Defendant has engaged in a nationwide practice of sex-based pay and promotion discrimination. Specifically, Defendant paid female employees, including Plaintiff, less than similarly-situated male employees and promoted females, including Plaintiff, less frequently and at a slower rate than similarly-situated males.

45.    Upon information and belief, Plaintiff is aware of corporate decision-makers of Defendant who have communicated negative gender stereotypes toward women.

## COUNT I
## FAIR LABOR STANDARDS ACT (UNPAID OVERTIME)

46.    Plaintiff, TABITHA DEGUIDO, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through forty-five (45).

47.     Defendant, STERLING, is subject to the requirements of the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. § 216(b).

48.     Defendant is an enterprise engaged in commerce as defined by 29 U.S.C. § 203(s)(l)(A) in that it (a) has employees engaged in commerce or has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, and (b) has an annual gross volume of sales made or business done that is not less than $500,000.00.

49.     Plaintiff is covered as an individual under the FLSA because Plaintiff was engaged in interstate commerce as part of her job with Defendant. 29 U.S.C. §207(a)(1).

50.     Throughout her employment with Defendant, Plaintiff worked in excess of forty (40) hours per week, for which she was not compensated at the overtime rate.

51.     The FLSA requires each covered employer such as Defendant to compensate all non-exempt employees, such as Plaintiff, at a rate of not less than 1 ½ times their regular rate of pay for all work performed in excess of forty (40) hours in a work week.

52.     Plaintiff is entitled to be paid overtime compensation for all overtime hours worked for Defendant.

53.     Defendant's failure to pay Plaintiff overtime at a rate not less than 1 ½ times the regular rate of pay for work performed in excess of forty (40) hours in a work week, violates the FLSA, 29 U.S.C. §§201 *et seq.,* including 29 U.S.C. § 207.

54.     Defendant knew or had reason to know that Plaintiff performed work outside of her regular schedule and therefore worked in excess of forty (40) hours per work week.

55.    Defendant's violations of the FLSA were knowing, willful, and in reckless disregard of the rights of Plaintiff.

56.    As a direct result of Defendant's violations of the FLSA, Plaintiff suffered damages by being denied overtime wages in accordance with § 207 and § 216(b) of the FLSA, and has incurred reasonable attorneys' fees and costs.

57.    As a result of Defendant's violations of the FLSA, Plaintiff is entitled liquidated damages.

58.    Plaintiff is entitled to an award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff, TABITHA DEGUIDO respectfully requests that judgment be entered in his favor against Defendant, STERLING:

a.    Awarding Plaintiff overtime compensation in the amount due to her for the time worked in excess of forty (40) hours per work week as allowable under the FLSA statute of limitations period;

b.    Awarding Plaintiff liquidated damages in an amount equal to the overtime award;

c.    Awarding prejudgment interest;

d.    Awarding reasonable attorneys' fees and costs and expenses of the litigation pursuant to 29 U.S.C. §216(b);

e.    Determining that the FLSA was violated and an adjudication on the merits of the case;

f.    Ordering any other further relief the Court deems just and proper.

## COUNT II
## <u>TITLE VII - SEX DISCRIMINATION</u>

59.     Plaintiff, TABITHA DEGUIDO, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through forty-five (45).

60.     Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII")

61.     By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her sex by failing to promote Plaintiff for positions in which she was qualified, refusing to transfer Plaintiff when similarly-situated males were granted transfers, demoting Plaintiff, refusing Plaintiff a merit increase, and ultimately terminating Plaintiff's employment.

62.     Defendant has engaged in a pattern or practice of promoting females less frequently and at a slower rate than similarly-situated males.

63.     Defendant's adverse employment decisions toward Plaintiff were motivated by sex-based considerations.

64.     Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

65.     Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

66.     As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a.      Back pay and benefits;

b.      Prejudgment interest on back pay and benefits;

c.      Front pay and benefits;

d.      Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

e.      Punitive damages;

f.      Attorneys' fees and costs;

g.      Injunctive relief; and

h.      For any other relief this Court deems just and equitable.

## COUNT III
## TITLE VII – RETALIATION

67.     Plaintiff, TABITHA DEGUIDO, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through forty-five (45).

68.     Plaintiff engaged in protected activity by opposing an employment practice made unlawful by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*. ("Title VII") and participating in an employment discrimination proceeding.  Specifically, Plaintiff opposed sex discrimination and harassment and filed a Charge of Discrimination.

69.     In retaliation for engaging in protected activity, Plaintiff suffered several adverse employment actions by Defendant, including:

a.      a write-up;

b.      denials of transfer opportunities;

c.      demotion;

d.      denied a merit increase;

       e.     refused life insurance paperwork following the death of Plaintiff's fiancé;

       f.     being denied promotional opportunities;

       g.     termination;

       h.     failure to continue to match Plaintiff's 401(k) contribution.

70.     Stated differently, the adverse employment actions suffered by Plaintiff at the hands of Defendant are causally connected to her verbal complaints of discrimination and retaliation, as well as the filing of her Charge of Discrimination.

71.     The aforementioned actions by Defendant constitute retaliation by Defendant in violation of Title VII of the Civil Rights Act of 1964.

72.     Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federally-protected rights of Plaintiff.

73.     As a result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

       a.     Back pay and benefits;

       b.     Prejudgment interest on back pay and benefits;

       c.     Front pay and benefits;

       d.     Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

       e.     Punitive damages;

       f.     Attorneys' fees and costs;

g.    Injunctive relief; and

h.    For any other relief this Court deems just and equitable.

## COUNT IV
## AMERICANS WITH DISABILITIES ACT – DISCRIMINATION

74.    Plaintiff, TABITHA DEGUIDO, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through forty-five (45).

75.    Plaintiff is an individual entitled to protection under the Americans with Disabilities Act, as amended, 42 U.S.C. §12112 *et seq.*

76.    Plaintiff is an employee within the meaning of the Americans with Disabilities Act, as amended.

77.    Plaintiff is an individual with a disability within the meaning of the Americans with Disabilities Act, as amended.  Specifically, Plaintiff's progressive auto-immune disease, migraine and cluster headaches substantially limited one or more major life activities and/or bodily functions.

78.    Plaintiff was a qualified individual with a disability within the meaning of the Americans with Disabilities Act, as amended, because Plaintiff, with or without a reasonable accommodation, could perform the essential functions of her job.

79.    By the conduct described above, Defendant has engaged in unlawful employment practices and discriminated against Plaintiff on account of her known disability, and/or because Defendant regarded her as having a disability, and/or because of Plaintiff's record of having a disability in violation of the Americans with Disabilities Act, as amended. Specifically, Defendant failed to engage in the interactive process and reasonably accommodate Plaintiff's disabilities.  Furthermore, Defendant discriminated against Plaintiff

by refusing Plaintiff transfers, failing to promote Plaintiff, and ultimately terminating Plaintiff's employment.

80. The above described acts of disability discrimination constitute a violation of the Americans with Disabilities Act, as amended, for which Defendant is liable.

81. Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

82. Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

83. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a. Back pay and benefits;

    b. Prejudgment interest on back pay and benefits;

    c. Front pay and benefits;

    d. Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

    e. Punitive damages;

    f. Attorneys' fees and costs;

    g. Injunctive relief; and

    h. For any other relief this Court deems just and equitable.

### COUNT V
### AMERICANS WITH DISABILITIES ACT – RETALIATION

84. Plaintiff, TABITHA DEGUIDO, re-alleges and adopts, as if fully set forth

herein, the allegations stated in Paragraphs one (1) through forty-five (45).

85.     Plaintiff suffered adverse employment actions for engaging in protected activity under the Americans with Disabilities Act, as amended. Specifically, Defendant issued Plaintiff a write-up, refused to provide Plaintiff with beneficiary paperwork after her fiancé passed away, terminated Plaintiff, and failed to match Plaintiff's 401(k) contribution after Plaintiff filed her first Charge of Discrimination. Stated differently, Defendant's adverse employment actions were causally connected to Plaintiff's participation in filing her first Charge of Discrimination.

86.     The above described act of retaliation constitutes a violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12112 *et seq.*

87.     Defendant's unlawful and retaliatory employment practices toward Plaintiff were intentional.

88.     Defendant's unlawful and retaliatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

89.     As a result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a.     Back pay and benefits;

b.     Prejudgment interest on back pay and benefits;

c.     Front pay and benefits;

d.     Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

e.     Punitive damages;

f.      Attorneys' fees and costs;

g.      Injunctive relief; and

h.      For any other relief this Court deems just and equitable.

## COUNT VI
## EQUAL PAY ACT

90.      Plaintiff, TABITHA DEGUIDO, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through forty-five (45).

91.      Defendant's practice of paying Plaintiff less than it paid male employees for equal work on jobs the performance of which required equal skill, effort and responsibility and which was performed under similar working conditions violates the EPA at 29 U.S.C. § 206(d).

92.      Defendant knew that its failure to provide Plaintiff pay equal to the pay it provided male employees for equal work on jobs the performance of which required equal skill, effort and responsibility and which was performed under similar working conditions was in violation of the law or acted in reckless disregard of whether its conduct was in violation of the law.

93.      As a direct result of Defendant's unlawful conduct, Plaintiff lost pay to which she was entitled during the time she was employed by Defendant.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a.      Damages for the difference in pay between what similarly situated males earned to that which Plaintiff earned during the period she was employed by Defendant;

b.      Liquidated damages,

c.      Prejudgment interest

d.    Attorneys' fees and costs; and,

e.    All such other relief as this Court may deem just and equitable.

## COUNT VII
## FAMILY AND MEDICAL LEAVE ACT -- INTERFERENCE

94.    Plaintiff, TABITHA DEGUIDO, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through forty-five (45).

95.    Plaintiff is an individual entitled to protection under the Family and Medical Leave Act (FMLA), 29 U.S.C. §2601, *et seq.*

96.    Plaintiff is an eligible employee within the meaning of the FMLA because Plaintiff worked for Defendant for twelve (12) months, had at least 1,250 hours of service for Defendant during twelve (12) months immediately preceding her FMLA protection, and worked at a location where Defendant had at least fifty (50) employees within seventy-five (75) miles.

97.    Defendant is a covered employer under the FMLA in that it had fifty (50) or more employees in twenty (20) or more work weeks in the current or preceding calendar year.

98.    Plaintiff suffered from serious health conditions within the meaning of the FMLA.

99.    Defendant's actions interfered with Plaintiff's lawful exercise of her FMLA rights by denying Plaintiff restoration to her position or an equivalent position.

100.    Defendant's actions constitute violations of the FMLA.

101.    As a result of Defendant's unlawful actions, Plaintiff has suffered damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a.      Back pay and benefits;

b.      Prejudgment interest on back pay and benefits;

c.      Front pay and benefits;

d.      Liquidated damages;

e.      Attorneys' fees and costs;

f.      Injunctive relief; and

g.      For any other relief this Court deems just and equitable.

## COUNT VIII
## FAMILY AND MEDICAL LEAVE ACT – RETALIATION

102.    Plaintiff, TABITHA DEGUIDO, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through forty-five (45).

103.    Defendant retaliated against Plaintiff in violation of the FMLA in that Plaintiff's utilization of qualified FMLA leave was a substantial or motivating factor that resulted in Plaintiff being denied a transfer, written-up, refused beneficiary documents, terminated from her employment with Defendant, and not having Plaintiff's 401(k) contribution matched by Defendant.

111.    Defendant's actions constitute a violation of the FMLA.

112.    As a result of Defendant's actions Plaintiff has suffered damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a.      Back pay and benefits;

b.      Prejudgment interest on back pay and benefits;

c.      Front pay and benefits;

d.      Liquidated damages;

e.  Attorneys' fees and costs;

f.  Injunctive relief; and

g.  For any other relief this Court deems just and equitable.

## COUNT IX
## FLORIDA CIVIL RIGHTS ACT - SEX DISCRIMINATION

113.  Plaintiff, TABITHA DEGUIDO, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through forty-five (45).

114.  Plaintiff is a member of a protected class under the Florida Civil Rights Act, Chapter 760, *Florida Statutes* ("FCRA").

115.  By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her sex by failing to promote Plaintiff for positions in which she was qualified, refusing to transfer Plaintiff when similarly-situated males were granted transfers, demoting Plaintiff, refusing Plaintiff a merit increase, and ultimately terminating Plaintiff's employment.

116.  Defendant has engaged in a pattern or practice of promoting females less frequently and at a slower rate than similarly-situated males.

117.  Defendant's adverse employment decisions toward Plaintiff were motivated by sex-based considerations.

118.  Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

119.  Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

120. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a.  Back pay and benefits;

b.  Prejudgment interest on back pay and benefits;

c.  Front pay and benefits;

d.  Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

e.  Punitive damages;

f.  Attorneys' fees and costs;

g.  Injunctive relief; and

h.  For any other relief this Court deems just and equitable.

## COUNT X
## FLORIDA CIVIL RIGHTS ACT – DISABILITY/HANDICAP DISCRIMINATION

121. Plaintiff, TABITHA DEGUIDO, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through forty-five (45).

122. Plaintiff is an individual entitled to protection under the Florida Civil Rights Act, Chapter 760, *Florida Statutes* ("FCRA").

123. Plaintiff is an employee within the meaning of the FCRA.

124. Plaintiff is an individual with a disability within the meaning of the FCRA and Americans with Disabilities Act, as amended. Specifically, Plaintiff's progressive auto-immune disease, migraine and cluster headaches substantially limited one or more major life activities and/or bodily functions.

125. Plaintiff was a qualified individual with a disability within the meaning of the FCRA and Americans with Disabilities Act, as amended, because Plaintiff, with or without a reasonable accommodation, could perform the essential functions of her job.

126. By the conduct described above, Defendant has engaged in unlawful employment practices and discriminated against Plaintiff on account of her known disability, and/or because Defendant regarded her as having a disability, and/or because of Plaintiff's record of having a disability in violation of the FCRA. Specifically, Defendant failed to engage in the interactive process and reasonably accommodate Plaintiff's disabilities. Furthermore, Defendant discriminated against Plaintiff by refusing Plaintiff transfers, failing to promote Plaintiff, and ultimately terminating Plaintiff's employment.

127. The above described acts of disability discrimination constitute a violation of the FCRA, for which Defendant is liable.

128. Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

129. Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

130. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a.      Back pay and benefits;

    b.      Prejudgment interest on back pay and benefits;

    c.      Front pay and benefits;

d.    Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

e.    Punitive damages;

f.    Attorneys' fees and costs;

g.    Injunctive relief; and

h.    For any other relief this Court deems just and equitable.

## COUNT XI
## FLORIDA CIVIL RIGHTS ACT—RETALIATION

131.   Plaintiff, TABITHA DEGUIDO, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through forty-five (45).

132.   Plaintiff engaged in protected activity by opposing an employment practice made unlawful by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII") and participating in an employment discrimination proceeding. Specifically, Plaintiff opposed sex discrimination and harassment and filed a Charge of Discrimination.

133.   In retaliation for engaging in protected activity, Plaintiff suffered several adverse employment actions by Defendant, including:

a.    a write-up;

b.    denials of transfer opportunities;

c.    demotion;

d.    denied a merit increase;

e.    refused life insurance paperwork following the death of Plaintiff's fiancé;

f.    being denied promotional opportunities;

g.     termination;

h.     failure to continue to match Plaintiff's 401(k) contribution.

134.     Stated differently, the adverse employment actions suffered by Plaintiff at the hands of Defendant are causally connected to her verbal complaints of sex discrimination and retaliation, as well as the filing of her Charge of Discrimination.

135.     The aforementioned actions by Defendant constitute retaliation by Defendant in violation of the Florida Civil Rights Act.

136.     Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

137.     As a result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a.     Back pay and benefits;

b.     Prejudgment interest on back pay and benefits;

c.     Front pay and benefits;

d.     Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

e.     Punitive damages;

f.     Attorneys' fees and costs;

g.     Injunctive relief; and

h.     For any other relief this Court deems just and equitable.

## COUNT XII
## FLORIDA'S PRIVATE WHISTLEBLOWER'S ACT

138.    Plaintiff, TABITHA DEGUIDO, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through forty-five (45).

139.    This is an action for damages pursuant to Florida's Private Whistleblower's Act. *Florida Statutes* § 448.101, *et seq.*

140.    The retaliatory actions described above in paragraph 133 were conducted by Defendant through its agents or employees, in part or in total, because Plaintiff objected to or refused to participate in the activities, policies, or practices of Defendant which were violations, or which Plaintiff had an honest, good-faith belief were violations of laws, rules or regulations.   Specifically, Plaintiff complained of and/or objected to, including but not limited to, theft by her manager, which was conducted within the course and scope of his employment and was ratified by Defendant.

141.    As a result of the retaliatory actions of Defendant, Plaintiff has suffered damages including: lost wages, benefits, and other remuneration, emotional distress, physical injury and humiliation.  These losses are permanent or intermittent and will continue into the future.

142.    As a result of Defendant's unlawful acts against Plaintiff, TABITHA DEGUIDO, Plaintiff has and will continue to incur attorneys' fees, which are recoverable under Section 448.104, *Florida Statutes*.

WHEREFORE, Plaintiff demands judgment against Defendant and prays for the following relief:

        a.    Injunction to restrain continued violations of the Act;

b.     Reinstatement to the same or an equivalent position;

c.     Reinstatement of fringe benefits and seniority rights;

d.     Lost wages;

e.     Lost benefits;

f.     Other remuneration;

g.     Attorneys fees and costs; and

h.     Any other compensatory damages allowable at law.

## COUNT XIII
## NEGLIGENT SUPERVISION/NEGLIGENT RETENTION

143.     Plaintiff, TABITHA DEGUIDO, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through forty-five (45).

144.     Defendant knew, or in the exercise of reasonable care, should have known during Mark Roth's course of employment with Defendant of problems with Mark Roth that indicated his unfitness and/or unsuitability as an employee, agent and/or servant of Defendant.

145.     Such problems included, but are not limited to: prior employee complaints about Mark Roth for inappropriate behavior, along with Roth's repeated sexual harassment of Plaintiff, culminating in the assault of Plaintiff.

146.     Defendant negligently failed to take further action such as investigating, discharging, or reassigning Mark Roth during the course of his employment, agency and/or service with Defendant.

147.     Defendant owed a duty to Plaintiff to exercise reasonable care in retaining competent, reliable and safe employees who Defendant knew or should have know would be

suitable to supervise, associate with and work alongside its employees.

148.    Defendant breached its duty to Plaintiff and others similarly situated to exercise reasonable care in retaining competent, reliable and safe persons by failing to exercise reasonable care in retaining Mark Roth, by failing to institute and/or enforce policies and/or procedures to properly investigate his background when it knew, or in the exercise of reasonable care, should have known, he would be unsuitable to supervise, associate with and work alongside its employees.

149.    It was reasonably foreseeable to Defendant that its negligence in retaining Mark Roth would pose a danger to persons such as Plaintiff and others similarly situated.

150.    As a direct and proximate result of the negligence of Defendant, Plaintiff has suffered damages, including, but not limited to:

       a.    Pain, suffering, anguish, and severe emotional distress;

       b.    Embarrassment;

       c.    Humiliation;

       d.    Loss of capacity for the enjoyment of life;

       e.    Inconvenience;

       f.    Loss of employment opportunities;

       g.    Loss or diminution of income and employment benefits;

       h.    Loss of dignity;

       i.    Damage to reputation; and

       j.    other non-pecuniary losses for which compensatory damages should be awarded.

WHEREFORE, Plaintiff, TABITHA DEGUIDO, demands entry of judgment against Defendant, STERLING, for compensatory damages, costs, and any other and further relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

151. Plaintiff, TABITHA DEGUIDO, demands a trial by jury on all issues so triable.

DATED this 10th day of May 2017.

**BOUZAS OWENS, P.A.**

**GREGORY A. OWENS, ESQUIRE**
Florida Bar No.: 51366
greg@bouzasowens.com
**MIGUEL BOUZAS, ESQUIRE**
Florida Bar No.: 48943
miguel@bouzasowens.com
2154 Duck Slough Blvd.
Suite 101
Trinity, Florida 34655
(727) 254-5255
(727) 483-7942 (fax)
*Trial Attorneys for Plaintiff*